UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| MARK WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:16-CV-52 |
| | ) |
| TENNESSEE STUDENT ASSISTANCE | ) |
| CORPORATION and RUSS DEATON, in his | ) |
| official capacity as Executive Director, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendants' Motion for Summary Judgment [doc. 50], Defendants' Brief in Support of the Motion [doc. 51], and Plaintiff's Response in Opposition [doc. 52]. For the reasons herein, the Court will grant the motion.

**I.     BACKGROUND**

A former student at the University of Tennessee, [Student Enrollment History, doc. 29, at 18–19], Plaintiff Mark Williams ("Mr. Williams") completed an application and promissory note to enter into the Tennessee Student Assistance Corporation's Tennessee Consolidation Loan Program, [Appl. & Promissory Note, doc. 29, at 6], seeking to consolidate three of his student loans, [*id.*; Jane Pennington Aff., doc. 30-1, ¶ 4]. At the time, Defendant Tennessee Student Assistance Corporation ("TSAC"), which is "the designated guaranty agency for loans made under the Federal Family Education Loan

Program ("FEELP") within the State of Tennessee," [Jane Pennington Aff. ¶ 3],[1] was the guarantor of the consolidated loan, [*id.* ¶ 4; *see* Appl. & Promissory Note at 6]. Mr. Williams, however, later defaulted on the consolidated loan and TSAC then became the holder of the loan. [Jane Pennington Aff. ¶¶ 6–7]. TSAC, through its contractor, Automated Collection Services, Inc. ("ACSI"), attempted to collect debts on the defaulted loan for roughly a year but without success. [ACSI Aff., doc. 29, ¶¶ 3–6]. ACSI maintains that it eventually mailed a letter to Mr. Williams entitled "Notice Prior to Wage Withholding," in which it notified him of its intent to garnish his wages. [*Id.* ¶¶ 5–10]. According to ACSI, this letter contained instructions about how Mr. Williams could not only avoid garnishment but also request a hearing to object to it. [*Id.* ¶ 10]. ACSI, however, attests that Mr. Williams did not request a hearing "in the manner proscribed by" the letter, [*id.* ¶ 11], so it proceeded to garnish Mr. Williams' wages, [*id.* ¶ 12].

In response, Mr. Williams, a pro se plaintiff, brought this action against TSAC and Russ Deaton ("Defendants") in his official capacity, claiming they deprived him of his constitutional rights under 42 U.S.C. § 1983 by garnishing his wages (Count I) and by committing a constructive conversion of his interest in the promissory note (Count II). [Compl., doc. 1, at 8–10]. The Court has dismissed Count I to the extent that Mr. Williams pursues monetary damages and has dismissed Count II in its entirety. [Order, doc. 15, at 1–2]. Count I remains pending to the extent that Mr. Williams seeks an injunction to

---

[1] *See* Tenn. Code. Ann. § 49-4-401(a) ("The Tennessee student assistance corporation, referred to in this part as 'TSAC', is given full power and authority to guarantee one hundred percent (100%) of any student loan . . . under the federal Higher Education Act of 1965 (20 U.S.C. § 1001 et seq.).").

prevent TSAC from continuing to garnish his wages under 20 U.S.C. § 1095a: "Plaintiff respectfully requests . . . [a] preliminary and a permanent injunction against [TSAC] and its officers, agents, and employees, prohibiting them from garnishing Plaintiff's wages, benefits, tax refunds or any other expropriation from [Plaintiff's] estate under 20 U.S. Code § 1095a." [Compl, doc.1, at 10]. Defendants now move for summary judgment on Mr. Williams' claim for injunctive relief. [Defs.' Mot. for Summ. J. at 1].

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party shows, or "point[s] out to the district court," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), that the record—the admissions, affidavits, answers to interrogatories, declarations, depositions, or other materials—is without a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a), (c). The moving party has the initial burden of identifying the basis for summary judgment and the portions of the record that lack genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party discharges that burden by showing "an absence of evidence to support the nonmoving party's" claim or defense, *id.* at 325, at which point the nonmoving party, to withstand summary judgment, must identify facts in the record that create a genuine issue of material fact, *id.* at 324.

Not just any factual dispute will defeat a motion for summary judgment—the requirement is "that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the case under the applicable substantive law, *id.*, and an issue is "genuine" if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In short, the

3

inquiry is whether the record contains evidence that "presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. When ruling on a motion for summary judgment, a court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A court may also resolve pure questions of law on a motion for summary judgment. *See Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 550 (6th Cir. 2015).

### III. ANALYSIS

Defendants present the Court with a two-part argument for summary judgment. First, they inform the Court that TSAC transferred its entire portfolio, including Mr. Williams' loan, to another entity in July 2016, and as a result, they argue that TSAC should no longer remain a party to this action because it has no interest in Mr. Williams' loan. [Defs.' Br. at 3–4]. While the Court, based on its research, is inclined to agree with Defendants, it cannot look past the fact that they have not cited a single source of legal authority supporting their position. Because Defendants do not supply the Court with case law and make no effort at legal analysis, the Court cannot accept their argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)); *see also* E.D. Tenn. L.R. 7.1(b) (requiring briefs

4

to contain "the legal grounds which justify the ruling sought from the Court"). Defendants therefore do not satisfy their burden as movants for summary as to their first argument.

Defendants' second argument does not suffer from the same problem, consisting of a raft of case law based on which Defendants contend that the Court cannot grant an injunction to Mr. Williams because, as a matter of law, a party cannot bring a private action to redress an alleged violation of § 1095a. [Defs.' Br. at 4–5]. Section 1095a(b) states:

> A hearing described in subsection (a)(5) of this section shall be provided prior to issuance of a garnishment order if the individual, on or before the 15th day following the mailing of the notice described in subsection (a)(2) of this section, and in accordance with such procedures as the Secretary or the head of the guaranty agency, as appropriate, may prescribe, files a petition requesting such a hearing. If the individual does not file a petition requesting a hearing prior to such date, the Secretary or the guaranty agency, as appropriate, shall provide the individual a hearing under subsection (a)(5) of this section upon request, but such hearing need not be provided prior to issuance of a garnishment order.[2]

In response, Mr. Williams does not address with any specificity whether federal law grants him a private right of action to enforce 1095a, merely claiming without any support that this issue "is immaterial to this case." [Pl.'s Resp. at 12]. Instead, in evasive fashion, he bombards the Court with the same litany of arguments that it previously rejected when it ruled on his two prior motions for summary judgment. [*See id.* at 1–24]. The Court is unable to agree with Mr. Williams' offhand contention that the question of whether § 1095a provides a debtor with a private right of action is an immaterial one, and the Court will now consider Defendants' argument.

---

[2] Again, ACSI filed evidence in which it attests that although it informed Mr. Williams as to how he could request a hearing to contest the garnishment of his wages, he did not pursue his right to a hearing. [*See* ACSI Aff. ¶¶ 5–12].

In doing so, the Court begins its analysis with an important observation: Mr. Williams' claims—or, that is to say, his remaining claim—arise under § 1983. [Compl. at 8–9]. An action under § 1983 "may be brought against state actors to enforce rights created by federal statutes." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 279 (2002); *see Stevenson v. Willis*, 579 F. Supp. 2d 913, 918 n.2 (N.D. Ohio 2008) ("Section 1983 creates a private right of action for violations of federally protected rights"). When a party, however, invokes § 1983 to enforce rights under a statute that Congress enacted via its spending power—that is, Congress' ability to spend to provide for the general welfare—the right to bring a private action under § 1983 is rare. *See Gonzaga Univ.*, 536 U.S. at 280 (stating that only twice "have we found spending legislation to give rise to enforceable rights" under § 1983). Indeed, "[i]n legislation enacted pursuant to the spending power, the typical remedy for state noncompliance . . . is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 28 (1981) (citation omitted).

In relying on § 1983 to safeguard what Mr. Williams believes are his federally protected rights under § 1095a, Mr. Williams claims Defendants "deprived and continue to deprive [him] of his federal Constitutional rights by garnishing [his] wages pursuant to 20 U.S.C. § 1095a." [Compl. ¶ 49]. Section 1095a is part of the Higher Educations Act of 1965 ("HEA"), *see* 20 U.S.C. §§ 1001–1161aa-1; *see also Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1118 (11th Cir. 2004) (describing § 1095a as "the wage garnishment provision of the HEA"), which Congress enacted via its spending power, *Ass'n of Private Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 459 (D.C. Cir. 2012) ("Congress enacted

6

the HEA pursuant to its spending power."). The question before this Court—and the question on which the survival of Mr. Williams' claim hinges—is whether § 1095a is a rare statute that grants a party a private right of action under § 1983 even though Congress passed it via its spending power.

The case law—both in this circuit and practically every other circuit—is clear that it is not: "[T]he HEA . . . does not create a private right of action" and "nearly every court to consider the issue in the last twenty-five years has determined that there is no express or implied private right of action to enforce *any* of the HEA's provisions." *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 710 (6th Cir. 2006) (emphasis added) (quoting *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1221 (11th Cir. 2002)). Although § 1095a provides debtors with certain rights during the administrative wage-garnishment process, including the right to receive a hearing, *see* § 1095(b), it does not endow debtors with the right to pursue recourse in response to a guaranty agency's noncompliance with its provisions. *See Cliff*, 363 F.3d at 1123 (stating that "[t]he HEA expressly empowers only the Secretary of Education—not debtors—with the authority to enforce the HEA and rectify HEA violations." (citations omitted)); *Gifford v. Meda*, No. 09-cv-13486, 2010 WL 1875096, at *15 (E.D. Mich. May 10, 2010) ("[T]he HEA's enforcement scheme[] grant[s] the Secretary of Education exclusive authority to remedy violations of the HEA[.]" (quoting *McCulloch*, 298 F.3d at 1227)).

Indeed, the HEA's statutory scheme illustrates that Congress considered the possibility that a guaranty agency might not adhere to the HEA's provisions and that it intended *only* for the Secretary of Education to have license to redress a guaranty agency's

7

noncompliance. *See, e.g.*, 20 U.S.C. § 1082(g)(1) (authorizing the Secretary of Education to impose a civil penalty of $25,000 on a guaranty agency that violates any of the HEA's provisions); *Cliff*, 363 F.3d at 1123; *Gifford*, 2010 WL 1875096 at *15; *see generally Gonzaga Univ.*, 536 U.S. at 280 ("[U]nless Congress 'speak[s] with a clear voice,' and manifests an 'unambiguous' intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983" (quotation omitted)). In addition, because Congress "explicitly provides for enforcement through an administrative action brought by the Secretary," *Thomas M. Colley Law Sch.*, 459 F.3d at 711; *see* § 1082(g)(1), it has, in yet another way, manifested its intention to exclude a private right of action under the HEA, *see Williams v. Nat'l Sch. of Health Tech., Inc.*, 836 F. Supp. 273, 279 (E.D. Pa. 1993) ("Where a statute provides an administrative enforcement mechanism, it is presumed that Congress did not mean to create a private right of action." (citing *Karahalios v. Nat'l Fed'n of Fed. Emp's, Local 1263*, 489 U.S. 527, 533 (1989))).

Against the backdrop of Congress' clear intent to foreclose a private right of action under the HEA, some courts have addressed the question that is more specific to the facts here in Mr. Williams' case: whether a debtor who defaults on his student loans has license to sue a guaranty agency for an alleged violation of § 1095a. Consistent with the body of precedent in which courts decline to acknowledge a private right of action under the HEA, the answer is no. *See Bennett v. Premiere Credit of N. Am., LLC*, 504 F. App'x 872, 875, 877–78 (11th Cir. 2013) (concluding that the plaintiff, who had defaulted on her student loans, could not bring a private right of action against a guaranty agency for alleged violations of § 1095a's wage-garnishment provisions); *Halzack Watkins v. Educ. Credit*

8

*Mgmt. Corp.*, No. 2:09CV472, 2010 WL 2520653, at *2–3 (E.D. Va. June 17, 2010) (dismissing a claim for injunctive relief, which the plaintiff brought against a guaranty agency for alleged violations of § 1095a, because a private right of action does not exist under the HEA); *cf. Williams*, 836 F. Supp. at 278–80 (determining that private relief is unavailable under the HEA and dismissing the debtors' claim to prevent the guaranty agency's enforcement of the loans); *Jackson v. Culinary Sch. of Wash.*, 788 F. Supp. 1233, 1260 (D.D.C. 1992) (dismissing claims against the guaranty agencies in an action brought by students who defaulted on their student loans, because a private right of action is unavailable under the HEA). Mr. Williams therefore has no legal basis through which he may pursue the relief he seeks under § 1983, namely injunctive relief for an alleged violation of § 1095a. Defendants are therefore entitled to summary judgment.

## IV. CONCLUSION

Neither § 1095a nor any other provision of the HEA empowers Mr. Williams with a private right of action under § 1983. Mr. Williams does not provide the Court with any legal authority from which it can reach any other conclusion. Defendants' Motion for Summary Judgment [doc. 50] is therefore **GRANTED**. The Court will enter an order consistent with this opinion.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge